IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| LEANN M. DOTSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 4:10CV00785 AGF |
| | ) | |
| DON ROPER, | ) | |
| | ) | |
| Respondent. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the petition of Missouri state prisoner Leann Dotson for a writ of habeas corpus pursuant to 28 U.S.C. ' 2254. Petitioner pled guilty in the Circuit Court of St. Francois County, Missouri, to second degree robbery, armed criminal action, and stealing over $25,000. She was sentenced to concurrent terms of imprisonment of 15 years, life, and 15 years, respectively. (Resp. Ex. C at 54-55.) For habeas relief, Petitioner asserts that her constitutional rights were violated in three ways:

1. The Circuit Court judge lacked jurisdiction to preside over plea and sentencing proceedings;

2. Plea counsel rendered ineffective assistance of counsel in that Petitioner was unaware of the nature and consequences of her plea; and

3. Plea counsel rendered ineffective assistance of counsel in failing to investigate Petitioner's case and in advising Petitioner that she had no defense at trial.

For the reasons set forth below, the petition for habeas relief will be denied.

**BACKGROUND**

**Charges and Guilty Plea Hearing**

On August 18, 2006, Petitioner and two accomplices stole at gunpoint an armored car containing at least $100,000. (Resp. Ex. C at 35-36, 45, 51.) Under a plea agreement with the State, Petitioner pled guilty to second degree robbery, armed criminal action, and stealing over $25,000. *Id.* at 32-33. This reflected a reduction of the originally charged first degree robbery charge[1] to second degree robbery. Prior to the plea, Petitioner's counsel deposed Eugene Ford, Petitioner's father, a co-participant in the crime who was expected to testify against Petitioner at trial. Petitioner's counsel asked Ford whether he had received a plea deal, and he said he had not and that there was "nothing in the works." *Id.* at 97.

At the plea hearing, Petitioner testified that she understood the nature of and admitted committing each of the offenses she was charged with. She also acknowledged that after receiving *Miranda* warnings she had freely and voluntarily made a confession to police officers. Both counsel and Petitioner stated that after discussing the case together, they each agreed that a motion to suppress the confession would have been futile.

The prosecutor stated that the State did not oppose either Petitioner's request for a sentencing assessment report (SAR) or her request for counsel to argue for a lesser sentence at the sentencing hearing. Petitioner stated that she understood the plea

---

[1] A conviction for first degree robbery requires a defendant to serve 85% of her sentence. Mo. Rev. Stat. § 558.019.3 (2000).

agreement and that no promises other than the plea agreement had been made in exchange for her guilty pleas.

In the following exchange the plea court informed Petitioner of the range of punishment for each offense and confirmed that Petitioner understood the sentences she could possibly receive for each offense under the plea agreement:

> [The Court]: [Prosecutor] and [Defense counsel], what plea bargain agreement do you have in this matter now?
>
> [Prosecutor]: Judge, as to Count I, in exchange for the defendant's plea of guilty to the amended charge of robbery in the second degree, the State is going to recommend a sentence of fifteen years in the Department of Corrections.
> As to Count II, in exchange for her plea of guilty to the charge of armed criminal action, the State is going to recommend a sentence of life in prison.
> As to Count III, in exchange for her plea of guilty to the class B felony of stealing, the State is going to recommend a sentence of fifteen years in the Department of Corrections.
> State will agree that those sentences run concurrently with each one another, for a total of life in prison.
> My understanding (sic) that the defendant wishes to request a sentencing assessment report and be free to argue on the date of sentencing, which I will not oppose.
>
> [Defense Counsel]: That's our understanding, Your Honor.
>
> [The Court]: Do you understand that plea bargain agreement, Ms. Dotson?
>
> [Petitioner]: Yes.
>
> [The Court]: Do you have any questions about it at all?
>
> [Petitioner]: Um, . . .
>
> (A discussion was had off the record between the defendant and her attorney.)
> (The following proceedings were had on the record:)

[Petitioner]: Yes.

[The Court]: Is there anything that you don't understand about it you want to ask me?

[Petitioner]: No, sir, just –

[The Court]: I am going to repeat this. My understanding is that the State will be recommending fifteen years on Count I, a life sentence on Count II, and fifteen years on Count III. All of those to run concurrently with each other. You're requesting a sentencing assessment report. *Both sides would be free to argue at the time of sentencing*.

[Petitioner]: Yes, sir.

[The Court]: Is that how you understand the agreement?

[Defense Counsel]: You have agreed though that you're not going to argue for any more than the cap?

[Prosecutor]: I couldn't. That's the cap.

[Defense Counsel]: Okay. Just to be clear. Thank you, Your Honor.

[The Court]: Do you understand all of this now?

[Petitioner]: Yes, sir.

[The Court]: *Are there any other promises or agreements that you say have been made other than what we've just talked about here now on the record?*

[Petitioner]: No.

[The Court]: Do you understand by my accepting your pleas of guilty, I am agreeing to be bound by the terms of your plea bargain agreement, which means there will be a sentencing assessment report done by the Board of Probation and Parole.
 *When you return before me for sentencing, the most you could now receive on these charges, the most would be fifteen years on Count I, a life sentence on Count II, fifteen years on Count III, all to run concurrently with each other.*

4

>       You couldn't receive any more than that.  Your attorney is free to argue for something less than that.  *The State will be arguing for that sentence.*  Do you understand that?
>
>       [Petitioner]:  Yes.

*Id.* at 32-35 (emphasis added).

Petitioner also testified that her guilty pleas were not conditioned upon any plea agreement the State might have with any of Petitioner's co-defendants; that her plea counsel had done all that Petitioner had requested and had not refused to do anything Petitioner believed counsel should have done; that counsel had thoroughly discussed and explained any possible defenses; that she had sufficient opportunity to discuss the case with counsel; and that she was fully satisfied and had no complaints with counsel's advice and handling of the case, including whether counsel investigated the case to Petitioner's satisfaction.  *Id.* at 25-27, 38-39.

The plea court subsequently accepted Petitioner's pleas of guilty, finding that there was a factual basis for each count she pled to and that Petitioner's pleas of guilty were voluntarily and intelligently made with a full understanding of the charges and consequences of pleading guilty.  *Id.* at 39-40.

**Sentencing Hearing**

At the sentencing hearing, after hearing arguments from both the State and Petitioner, the court sentenced Petitioner in accordance with the State's recommendation of concurrent terms of 15 years' imprisonment for robbery, life imprisonment for armed criminal action, and 15 years' imprisonment for stealing.

Petitioner told the court that she understood the sentence. Petitioner also told the court that she had sufficient opportunity to discuss the case with her attorney before she entered her pleas of guilty, that counsel did everything that Petitioner asked counsel to do prior to Petitioner's guilty pleas, and that Petitioner was satisfied with the services rendered to her by her attorney. She also stated that her attorney had not communicated any threats or promises, other than the terms of the plea agreement, to Petitioner to induce her to enter her pleas of guilty. *Id.* at 57. The court explicitly made a finding that "no probable cause of ineffective assistance of counsel exists in this case." *Id.* at 57-58.

**State Post-Conviction Motion**

In her amended motion for post-conviction relief, Petitioner raised five arguments, four of which are relevant here.[2] One claim was based on the lack of jurisdiction and three claims were for ineffective assistance of counsel. With respect to each claim of ineffective assistance, Petitioner asserted prejudice due to counsel's failure to inform her of the nature and consequences of her plea thus rendering it involuntary.

First, Petitioner argued that her plea and sentence were invalid because the plea judge lacked jurisdiction to preside over her case. Petitioner asserted that she had requested a change of judge and that if a request for disqualification had been properly made, the judge had a duty to disqualify himself and would have no further jurisdiction over the case. Petitioner also asserted that her counsel was ineffective for failing effectively to move for a change of judge.

---

[2] Petitioner also claimed that her counsel was ineffective in failing to obtain a change of judge, which she did not assert in her habeas petition.

Second, Petitioner argued that counsel was ineffective in failing to obtain a change of venue. Petitioner asserted that the residents of St. Francois County were biased against her because a high percentage of residents worked in or with law enforcement. She also asserted that she was prejudiced by the publicity the robbery had received.

Third, Petitioner argued that counsel was ineffective in advising Petitioner unequivocally that the court would sentence Petitioner in accordance with the SAR and that she would not receive life in prison. Petitioner contended that she did not understand what the terms of the agreement were when the prosecutor announced them during the hearing. Petitioner stated that counsel told her off the record that "free to argue" meant that an SAR would be ordered and that the State would "not oppose" the recommendation. *Id.* at 86. She also asserted that she did not understand the specific meaning of "free to argue" and "will not oppose" and that counsel did not explain to Petitioner that "free to argue" meant she was essentially "pleading open" to the court and that the court had available to it the full range of punishment. *Id.* at 85.

Fourth, Petitioner contended that counsel was ineffective in failing to investigate Petitioner's case and advising Petitioner that she had no defense at trial. Petitioner argued that Ford either had a deal in place or would be testifying with the hope of receiving a favorable plea deal after his testimony, and therefore had a motive to lie, in contradiction to counsel's statement to Petitioner that he would have no motive to lie. Petitioner also argued that Ford had already received consideration for his testimony because his bail had been reduced and his case had been continued multiple times.

7

The state court denied the motion without an evidentiary hearing. With respect to Petitioner's first argument, the motion court found as a factual matter that Petitioner had not actually moved for a "change of judge" under Rule 32.07 because the motion for change of venue contained only reference to the number "32.07," without request for a change of judge. The court noted that an application for a change of judge must include the words "[party] requests a change of judge" and that a mere reference to the statute was insufficient. The Court noted that Petitioner "tacitly admitt[ed] the application says nothing about a change of judge in her Amended Motion at 11." *Id.* at 104. The motion court also found under state law that Petitioner had waived any right to disqualify the judge by her guilty plea.

The court rejected Petitioner's claim that counsel had been ineffective for failing to obtain a change of venue. The court found that Petitioner could not plead facts sufficient to warrant a change of venue. The court held that Petitioner could not establish, as required under state law, that the inhabitants of the county were biased against her on the basis of her contention that a large number of people in St. Francois County worked in law enforcement.

The court rejected Petitioner's argument that her sentence was not in accordance with the SAR as Petitioner expected. The court found that Petitioner had acknowledged on the record that she understood the effects of her guilty plea and the possible outcomes at sentencing. The court noted that Petitioner had also denied that the plea was the product of any secret promises and could not now complain that the plea was the result of misunderstanding. *Id.* at 105-07.

Finally, the court denied Petitioner's claim that counsel had been ineffective for failing to investigate Petitioner's case. The court noted that Petitioner's counsel had deposed Ford and asked him if any plea offers had been made, and he denied receiving an offer. Noting that counsel cannot be deemed ineffective for failing to call an impeachment or rebuttal witness unless doing so would establish a defense to the crime charged, the court found that Ford's impeachment would not have provided a defense for Petitioner.

**Appeal of Denial of Post-Conviction Motion**

Petitioner appealed only the motion court's decision with respect to three of her ineffective assistance claims: (1) that her counsel had affirmatively advised Petitioner that the court would sentence her in accordance with the SAR, (2) that her counsel failed to obtain a change of venue, and (3) that counsel failed to investigate Petitioner's case and told Petitioner that she had no defense at trial.

The Missouri Court of Appeals affirmed the motion court's denial without a hearing of Petitioner's request for post-conviction relief, concluding that the motion court's findings and conclusions were not clearly erroneous.

With respect to Petitioner's first claim, the appellate court noted that a court will find defendant's guilty plea was voluntary if the plea court's questioning of the defendant at the plea proceeding "thoroughly disabused [her] of any preconceived notions regarding the consequences of a guilty plea." (Resp. Ex. E at 5) (citing *Allen v. State*, 233 S.W.3d 779, 784 (Mo. App. E.D. 2007)). It agreed with the motion court's finding that the transcript of the plea hearing conclusively refuted Petitioner's allegation that she believed

she would receive a sentence in accordance with the SAR and that she did not understand the terms "free to argue" and "will not oppose." *Id.* at 6. The Missouri Court of Appeals further found that the colloquy in the plea court clearly established that the State would be free to argue for concurrent terms of 15 years, life imprisonment, and 15 years. According to the appellate court it also was clear that the State had agreed not to oppose Petitioner's request for an SAR and counsel's opportunity to argue for a lesser sentence at the sentencing hearing, but the State expressly retained its ability to argue for the sentence it was recommending.

The Missouri Court of Appeals also noted that, as the motion court found, Petitioner stated at the plea hearing that she understood the effects of her guilty plea and the possible outcome at sentencing. The court concluded that Petitioner could not complain that the plea resulted from a misunderstanding because at the hearing she stated that the plea was not the product of secret promises by counsel and that she understood the effect of her guilty plea including the possible outcomes at sentencing. The appellate court held that Petitioner's expectation of a lighter sentence based on a mere prediction by or advice of counsel did not necessitate a finding of legal coercion rendering her plea involuntary.

As to Petitioner's second argument, the Missouri Court of Appeals found that Petitioner had not alleged sufficient facts to show that she would have been entitled to a change of venue. The court noted that although Petitioner alleged that it would have been "impossible" to get a fair and impartial jury in the county due to the sensational nature of the events and the substantial publicity the case had received, Petitioner had not alleged

10

that any specific publicity caused potential jurors to be biased against her. It concluded that counsel could not be faulted for failing to make a futile motion.

The Missouri Court of Appeals also affirmed the denial of Petitioner's third claim, finding that the motion court's findings and conclusions were not clearly erroneous. The appellate court agreed with the motion court that counsel knew Ford would testify either with a deal or hoping to receive one. Either way, counsel would have known his motivation. "It is unclear what further 'investigation' [Petitioner] would have hoped for." *Id.* at 13. The Missouri Court of Appeals held that counsel would not be deemed ineffective for (1) failing to further investigate Ford, because he would not have provided a viable defense or (2) failing to discover impeachment evidence that would not have given rise to a reasonable doubt of Petitioner's guilt under the circumstances. The appellate court noted that even if Petitioner's counsel had investigated potential deals Ford had been offered in exchange for his testimony, implying that Ford was not a credible witness, "given [Petitioner's] full confession at the time police questioned her about the crimes, it was unlikely that counsel would have advised Petitioner to proceed to trial instead of pleading guilty." *Id.*

**Federal Habeas Petition**

Petitioner raises three claims in her federal habeas petition. First, she asserts that the plea court lacked jurisdiction because the judge did not disqualify himself from the case. Second, Petitioner asserts that plea counsel was ineffective for advising her that the court would sentence her in accordance with the SAR. Petitioner notes in her petition that she believed that with just days before trial was to begin, her best chance for a lenient

11

sentence was to accept a plea bargain agreement.  Third, Petitioner argues that her plea counsel was ineffective for failing to investigate her case and for advising her that she had no defense to the charges.  Petitioner pointed to the reduction of Ford's bond and the continuance on four occasions of his preliminary hearing as indications that counsel had failed sufficiently to investigate her case.

Respondent argues that Petitioner's first claim, asserting a lack of jurisdiction, fails for three reasons.  First, Respondent contends the claim is procedurally defaulted because Petitioner did not advance the claim when she appealed the denial of her motion for post-conviction relief, and Petitioner cannot demonstrate cause for or prejudice from the default.  Second, Respondent argues the claim is non-cognizable because Petitioner's assertion that the state court lacked jurisdiction over her criminal case by failing to disqualify himself is a question of state law.  Federal habeas relief does not extend to jurisdictional challenges concerning the proper application of state law as opposed to constitutional challenges to the validity of a state law.  As such, it is beyond the reach of federal habeas relief.  Respondent further argues that the claim does not implicate United States Supreme Court precedent, much less contravene or unreasonably apply it.

Respondent argues that Petitioner's second claim for habeas relief, that her plea counsel was ineffective for advising her that the court would sentence her in accordance with the SAR, fails because the Missouri Court of Appeals' decision was reasonable under clearly established federal law.  Respondent argues that Petitioner's statements at the plea and sentencing hearings that she had no agreement beyond the plea agreement discussed in court are irreconcilable with her current claim that her plea counsel promised that

12

Petitioner would be sentenced in accordance with the SAR. According to Respondent, the court's statements corrected any misunderstanding Petitioner may have had regarding the sentencing possibilities.

Finally, Respondent argues that Petitioner's third claim fails because the Missouri Court of Appeals' decision was reasonable. Respondent notes that Petitioner knew prior to her plea that Ford was cooperating with the State, and she would have been aware of any motive he had to lie. Respondent notes that Dotson and plea counsel referenced a discussion of a "plea offer that was made in her father's case." (Resp. Ex. C at 38.) Respondent also argues that impeaching Ford regarding his expectation of leniency was unlikely to have any effect because the State had a strong case, including Petitioner's confession to first degree robbery. *Id.* at 25-27. Respondent also notes that plea counsel secured a reduction of the robbery charge from first degree to second degree. If Petitioner had been convicted of first degree robbery, she would have been required to serve 85% of her sentence. The reduction of the charge meant that, depending on the length of her sentence, it was possible that Petitioner could have served as little as one-third of her sentence. *See* Mo. Rev. Stat. § 558.011.4.

## DISCUSSION

### Plea Court's Jurisdiction / Procedural Default

"Ordinarily, a federal court reviewing a state conviction in a federal habeas corpus proceeding may consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules." *See Arnold v. Dormire*, 675 F.3d 1082, 1086-87 (8th Cir. 2012) (citation omitted). A state prisoner who defaults on his federal

13

claims in state court is generally barred from federal habeas review unless the prisoner can show cause for the default and prejudice that results from the default. *Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012). The limited exception enunciated in *Martinez* does not apply in this case because Petitioner's claim is not for ineffective assistance of counsel. *See id.* (holding that procedural default will not bar a federal habeas court from hearing a substantial ineffective assistance claim where there was no counsel or counsel was ineffective in initial-review collateral proceeding). Therefore, federal habeas review of Petitioner's first claim is unavailable unless she can demonstrate cause for her default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that the failure to consider her claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. A "fundamental miscarriage of justice" is only found "when a petitioner makes a showing, based on new evidence, that a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Brownlow v. Groose*, 66 F.3d 997, 999 (8th Cir. 1995); *see also Pitts v. Norris*, 85 F.3d 348, 350 (8th Cir. 1996) (only evidence of factual, not legal, innocence may trigger the exception). Petitioner does not allege any cause for her default, nor does she make any showing that she is actually innocent. Therefore, her procedural default bars federal habeas review of her claim.

Even if Petitioner's claim was not procedurally defaulted, it would fail because the claim is not cognizable. A petitioner's claim that the state court lacked jurisdiction over her criminal case, based on a failure to grant a change of judge under Rule 32.07, is one of state law and is not cognizable in federal habeas action. *Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994); *Martin v. Solem*, 801 F.2d 324, 331 (8th Cir. 1986). Even construing the

14

claim as one for the violation of due process, the determination is not for the federal courts when the jurisdictional challenge concerns the proper application of state law and is not a constitutional challenge to the validity of a state law. *See Poe*, 39 F.3d at 207. Therefore, Petitioner's claim is not proper for federal habeas review.

**Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus cannot be granted unless the state court's adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. ' 2254(d).

The "contrary to" clause is satisfied if a state court has arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or confronts facts that are materially indistinguishable from a relevant Supreme Court precedent but arrives at the opposite result. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 40-06 (2000)). A state court "unreasonably applies" clearly established federal law when it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 413; *see also Linehan v. Milczark*, 315 F.3d 920, 924 (8th Cir. 2003).

A case cannot be overturned merely because it incorrectly applies federal law; the application must also be "unreasonable." *Wright v. Bowersox*, 720 F.3d 979, 985 (8th Cir. 2013). "The factual findings of the state court also may be challenged in a ' 2254 petition, but they are subject to an even more deferential review." *Kinder v. Bowersox*, 272 F.3d 532, 538 (8th Cir. 2001).

**Ineffective Assistance of Counsel / Failure to Change Venue**

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must not only show that counsel=s performance was deficient, but that he was prejudiced by his counsel's incompetence. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). In order to show prejudice, a habeas petitioner who pled guilty in state court must show that "there is a reasonable probability that, but for counsel=s errors, [he] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (applying *Strickland* to the guilty plea context).

To the extent that Petitioner's reference to her motion to change venue is a continuation of the ineffective assistance claim she made on appeal, the Court finds that the claim fails. The Missouri Court of Appeals reasonably found that a large portion of the county's population working in or with law enforcement and publicity surrounding the case did not show bias against Petitioner. The appellate court noted that Petitioner had not presented any evidence of bias caused by the publicity. The Missouri Court of Appeals reasonably concluded that counsel was not ineffective because Petitioner could not plead sufficient facts to show that she was entitled to a change of venue. *See, e.g.*, *United States v. McNally*, 485 F.2d 398, 403 (8th Cir. 1973) ("Just because, however, there has been widespread or even

adverse publicity is not in itself grounds to grant a change of venue."); *Mastrian v. McManus*, 554 F.2d 813, 818 (8th Cir. 1977) (rejecting challenge to conviction where over 40% of those examined for jury duty admitted to having an opinion as to defendant's guilt and all twelve jurors had read about the case but claimed they could remain impartial).

**Ineffective Assistance of Counsel / Involuntary Plea**

A guilty plea, which waives a criminal defendant=s right to a trial, "not only must be voluntary," but must be a knowing, intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970); *see also North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (guilty plea that is not Avoluntary and knowing@ violates due process).

Here, Petitioner was informed of the sentences she could receive under each count to which she pled guilty. As Respondent argues, Petitioner's representations during the plea hearing carry a strong presumption of verity and pose a "formidable barrier to any subsequent collateral proceedings." *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997) (citation omitted). Considering Petitioner's statements at the plea and sentencing hearings, the state courts were reasonable in finding that Petitioner received effective assistance of counsel and voluntarily, knowingly, and intelligently pled guilty. *See Nelson v. Hvass*, 392 F.3d 320, 323-24 (8th Cir. 2004) (holding that where habeas petitioner was informed at guilty plea hearing as to what his sentencing exposure was, state courts= finding that he did not base his decision to plead guilty on his attorney=s alleged misstatements on the likely sentencing consequences if he pleaded guilty instead of going to trial was not an unreasonable determination of the facts); *Wilcox v. Hopkins*, 249 F.3d 720, 724-75 (8th Cir. 2001) (rejecting

17

claim of ineffective assistance based upon counsel=s alleged misinformation as to likely sentencing consequences of pleading guilty where the state court advised petitioner of applicable minimum and maximum sentence); *Dunn v. Wyrick*, 679 F.2d 731, 732-33 (8th Cir. 1982) (rejecting habeas petitioner's claim that plea counsel was ineffective for, among other things, misleading petitioner into believing he would receive a certain sentence, in light of petitioner=s testimony at plea hearing that he was satisfied with counsel=s performance).

**Ineffective Assistance of Counsel / Failure to Investigate Claim**

As to Petitioner's third habeas claim for ineffective assistance of counsel, she must show a reasonable probability that, but for counsel's errors, she would not have pled guilty and would have insisted on a trial. *Hill*, 474 U.S. at 59; *Witherspoon v. Purkett*, 210 F.3d 901, 903 (8th Cir. 2000). A determination of prejudice "will depend on the likelihood that discovery of the evidence would have led counsel to change [her] recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence would have changed the outcome of the trial." *Hill*, 474 U.S. at 59. *See also Witherspoon*, 210 F.3d at 903-04.

Here, as the state motion and appellate courts noted, it is unclear how additional investigation would have helped. During the plea hearing counsel referred to a discussion with Petitioner of a plea offer that was made in Ford's case. (Resp. Ex. C at 38-39.) Petitioner and her counsel therefore knew that Ford was cooperating with the prosecution. Moreover, Petitioner has never denied that she made a full confession to police. Further, Petitioner received a substantial benefit from the plea agreement. As a result of her guilty plea, one of the charges against Petitioner was reduced from first to second degree robbery.

This meant that Petitioner would not be required by statute to serve 85% of her sentence as she would have if convicted of first degree robbery.

In light of Petitioner's full confession as well as her knowledge that Ford would testify against her either with a plea deal or in hopes of receiving leniency, it was not unreasonable to conclude that Petitioner failed to show a reasonable probability that, but for the failure to investigate, Petitioner would not have pled guilty and would have proceeded to trial. The Court finds that the Missouri Court of Appeals was not unreasonable in finding that Petitioner had received effective assistance of counsel and voluntarily, knowingly, and intelligently pled guilty. *See Schone v. Purkett*, 15 F.3d 785, 789-90 (8th Cir. 1994) (rejecting habeas petitioner's claim that plea counsel was ineffective where petitioner failed to point to any new facts or legal arguments that would have affected his decision to plead guilty); *Witherspoon*, 210 F.3d at 903-05 (holding that habeas petitioner claiming ineffective assistance for failure to investigate failed to show prejudice where there were significant inconsistencies between the witness's expected exculpatory testimony and statements to the police).

## **CONCLUSION**

The Court concludes that Petitioner is not entitled to federal habeas relief. Furthermore, the Court does not believe that reasonable jurists might find the Court=s assessment of Petitioner=s claims for habeas relief debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. '2254(d)(2). *See Miller-El v. Cockrell,* 537 U.S. 322, 338 (2003) (standard for issuing a Certificate of Appealability) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Leann M. Dotson for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not be issued in this case.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 30th day of September, 2013.